UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAMIAN GARCIA, CHRISTOPHER
ANGELO, and NATHAN BEAUCHAMP,
individually and on behalf of all others
similarly situated,

    Plaintiffs,

v.                                                Case No. 8: 20-cv-1065-WFJ-AAS

HARMONY HEALTHCARE, LLC, and
CHRISTIAN HG BROWN,

    Defendants.
_____/

## ORDER GRANTING MOTION TO COMPEL ARBITRATION

Plaintiffs filed this lawsuit against their former employer Harmony Healthcare, LLC and CEO Christian HG Brown (collectively "Defendants") for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Plaintiffs are suing individually and on behalf of those similarly situated. Defendants now move to compel arbitration based on arbitration agreements Plaintiffs signed at the beginning of their employment. Dkt. 21. The Court has reviewed the parties' briefs and held a hearing on the relevant issues. For the reasons stated below, the Motion is granted.

I. BACKGROUND

Plaintiffs Damian Garcia, Christopher Angelo, Nathan Beauchamp, and opt-in Plaintiff Aren Nilsson worked for Harmony Healthcare as account executives in the company's offices in Tampa, Florida. Dkt. 1 at 2. Before beginning their employment, Plaintiffs completed the onboarding process required for new employees. Dkt. 34-1 at 4–5.

Oasis Outsourcing, Inc., Harmony's professional employer organization (PEO), manages the onboarding process.[1] Dkt. 21-1 at 2. The process is completed virtually through Oasis's secure online portal. *Id.*; Dkt. 34-1 at 2. New employees receive a secure electronic link and access the portal by inputting their name, social security number, and Harmony's client identification number. Dkt. 34-1 at 2. Once logged in, employees are required to read, acknowledge, and electronically sign several forms. *Id.* at 3. One of these forms is the "Employee Acknowledgements" form ("Oasis Agreement"). *Id.* The form includes the following provision in which the employee agrees to resolve any legal dispute with Oasis or the "Worksite Employer" (Harmony) through binding arbitration:

> I and Oasis agree that any legal dispute with my Worksite Employer [Harmony], Oasis, or any other party that may have an employment relationship with me arising out of or in connection with my employment, application for employment, or separation from

---

[1] As a PEO, Oasis provides human resource and administrative support to various corporations. For Harmony specifically, Oasis processes employee pay, runs the onboarding process for new employees, and maintains personnel information for Harmony employees. Dkt. 34-1 at 1.

> employment for which I am, was, or would be paid through Oasis will be resolved exclusively through binding arbitration by a neutral arbitrator as provided in this agreement and, to the extent not inconsistent with this agreement, under the rules of a neutral arbitration service. The arbitrator will have the authority to grant the same remedies as a federal court (but no more), will apply the Federal Rules of Evidence and any applicable statutes of limitation, will render a reasoned, written decision based only on the evidence adduced and the law, and can grant attorney fees and costs to the prevailing party subject to applicable law. If for any reason a matter is not arbitrated, I AGREE THAT THE MATTER WILL BE HEARD BY A JUDGE AND WAIVE TRIAL BY JURY, and Oasis also agrees to waive trial by jury. No matter how a case is heard, I agree that I will participate only in my individual capacity and not as a member or representative of a class . . . . My agreement to these terms controls any conflicting dispute resolution agreement, including one entered into after I sign this document, if the conflicting agreement would prevent a matter in which Oasis or an insurance policy issued to Oasis is involved from being arbitrated, does not provide a jury waiver (if the matter is not arbitrated), or does not include a class action waiver (if the matter is a class action or potential class action).

Dkt. 21-1 at 4; Dkt. 34-1 at 8. Plaintiffs completed the onboarding process. Dkt. 34-1 at 4–5. And they all purportedly signed the Employee Acknowledgments form containing the above arbitration provision. Dkt. 21-1 at 4–6; Dkt. 34-1 at 8–10.

After completing the onboarding process, days later for Angelo and several months later for Beauchamp and Garcia, Plaintiffs each entered a written "Employment Agreement" with Harmony.[2] Dkt. 27 at 26–29, 37–40, 48–51. The Agreement laid out the terms of Plaintiffs' employment: their job duties, their

---

[2] There is no Employment Agreement in the record for opt-in Plaintiff Aren Nilsson.

3

compensation, and Harmony's policies. *Id.* The Agreement also included a noncompete and no-poach provision through which Plaintiffs agreed not to start a competing business or solicit Harmony's clients or employees for 12 months after the end of their employment. *Id.* at 27–28, 38–39, 49–50. Paragraph 15 of the Agreement also included the following merger clause:

> **Entire Agreement:** This instrument contains the entire agreement of the parties and supersedes any prior agreement, discussions, commitments, or understandings of any kind, whether oral or written; it may not be changed except by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, extension, or discharge is sought. The Employee acknowledges that he or she has received a copy of this agreement.

*Id.* at 28, 39, 50.

After their employment ended, Plaintiffs filed this action alleging that Defendants violated the FLSA by denying them overtime pay they were entitled to receive under the Act. *See* 29 U.S.C. § 216(b). Defendants answered the Complaint, Dkt. 17, and now move to compel arbitration as third-party beneficiaries of the Oasis Agreements Plaintiffs signed during the onboarding process, Dkt. 21. Plaintiffs respond that the Oasis Agreements are invalid and unenforceable for a lack of consideration and because there is insufficient evidence that Plaintiffs received or signed them. Alternatively, Plaintiffs argue that even if valid, the Oasis Agreements are still unenforceable because they were superseded by the subsequent Employment Agreements Plaintiffs entered directly with

4

Harmony. These later Employment Agreements, Plaintiffs assert, represented the "entire agreement" between the parties and include no requirement to arbitrate.[3]

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, establishes "a liberal federal policy favoring arbitration." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (citation omitted). Section 2 of the FAA provides that arbitration agreements in contracts "involving commerce" are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA requires that a district court—upon motion by a party to an action pending before the court—stay the action if it involves an "issue referable to arbitration under an agreement in writing." 9 U.S.C. § 3. And if the court finds that the parties are subject to a valid arbitration agreement, the court "shall make an order directing the parties to proceed to arbitration." 9 U.S.C. § 4. Accordingly, a district court must stay a lawsuit and compel arbitration upon finding that: (1) a plaintiff entered into a valid "written arbitration agreement that is enforceable 'under ordinary state-law' contract

---

[3] Plaintiffs do not dispute that Defendants are intended third-party beneficiaries to the Oasis Agreement and do not argue that Defendants cannot enforce the agreement based on their third-party beneficiary status. *See Koechli v. BIP Int'l., Inc.*, 870 So. 2d 940, 944 (Fla. 1st DCA 2004) (collecting cases holding that intended third-party beneficiaries of an arbitration agreement may compel arbitration by a signatory of the agreement); *Ross v. Vacation Rental Pros Prop. Mgmt., LLC*, No. 17-cv-16-26JSS, 2017 WL 10276731, at *1–3 (M.D. Fla. Mar. 17, 2017) (compelling arbitration under same Oasis Agreement presented here upon motion of third-party worksite employer).

principles," and (2) "the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (citing 9 U.S.C. §§ 2–4).

### III. DISCUSSION

The dispute here involves only the first step of the analysis. The issue is two-fold: whether the Oasis Agreement itself was a valid agreement between the parties to submit their potential claims to arbitration, and if so, whether it remained enforceable after the parties signed the Employment Agreements. The Court finds that the Oasis Agreement was a valid agreement to arbitrate and remained enforceable even after the Employment Agreements were signed.

**A. The Oasis Agreement was a valid agreement to arbitrate.**

Whether parties have entered an agreement to arbitrate is decided according to state contract law. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under Florida law, a valid contract requires an "offer, acceptance, consideration," *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004), and mutual assent to the essential terms of the agreement, *Gibson v. Courtois*, 539 So. 2d 459, 460 (Fla. 1989). The party seeking to enforce the contract bears the burden of proving these elements. *See Knowles v. C.I.T. Corp.*, 346 So. 2d 1042, 1043 (Fla. 1st DCA 1977).

The existence of a contract is a question of fact. *See Consolo v. A.M.K. Corp.*, 344 So. 2d 1285, 1286 (Fla. 3d DCA 1977) (per curiam). In the arbitration context, if the formation of an agreement is "in issue" a court must hold a trial to resolve any questions over whether an agreement was formed. 9 U.S.C. § 4. However, a court may conclude as a matter of law that the parties executed an agreement to arbitrate upon finding that there is no genuine dispute as to a material fact about the agreement's formation. *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016). A dispute is not "genuine" if it is not supported by evidence or if it is supported by evidence that is "merely colorable" or "not significantly probative." *Id.* (quoting *Baloco v. Drummond Co.*, 767 F.3d 1229, 1246 (11th Cir. 2014)).

Defendants have submitted copies of the Oasis Agreement that each Plaintiff signed electronically. Dkt. 21-1 at 4–6. Arbitration agreements that are electronically signed are valid and enforceable. *See, e.g.*, *Day v. Persels & Assocs.*, No. 10-cv-2463-T-33TGW, 2011 WL 1770300, at *3 (M.D. Fla. May 9, 2011); *Ross v. Vacation Rental Pros Prop. Mgmt., LLC*, No. 17-cv-16-26JSS, 2017 WL 10276731, at *2 (M.D. Fla. Mar. 17, 2017) (finding that the same Oasis Agreement presented here was valid and enforceable). Plaintiffs do not deny this general principle. They contend, rather, that the Oasis Agreement is invalid because it lacks consideration and Defendants have failed to prove that Plaintiffs' electronic

signatures on the Agreements comply with applicable federal and state law. Plaintiffs are wrong on both counts.

First, the Oasis Agreement was supported by two forms of consideration. Plaintiffs' continued employment depended on signing the Agreement. They could not complete the onboarding process without signing the Agreement and would not have received a paycheck if they failed to complete the onboarding process. *See Cintas Corp. No. 2 v. Schwalier*, 901 So. 2d 307, 309 (Fla. 1st DCA 2005) (finding continued employment was sufficient consideration to support an agreement to arbitrate). The Agreement's arbitration provision also charged Oasis with a mutual obligation to arbitrate. Dkt. 21 at 9 n.10. *See Bhim v. Rent-A-Ctr., Inc.*, 655 F. Supp. 2d 1307, 1312 (S.D. Fla. 2009) (finding defendant's mutual promise to arbitrate was sufficient consideration to render arbitration agreement enforceable). Either of these was sufficient consideration to support the Agreement.

To validate Plaintiffs' e-signatures, Defendants provided the affidavit of Luis Torres, an Oasis employee who maintains records for the electronic onboarding system. Dkt. 34-1. Torres explained that new hires complete the onboarding process through Oasis's secure website. *Id.* at 2–3. The new employees access the secure site using their social security numbers and Harmony's unique client identification number. *Id.* at 3. To complete the onboarding process, they must review and sign an arbitration agreement. *Id.* The employees sign the

8

agreement by clicking a button marked "Sign and Continue." *Id.* Clicking this button generates an electronic signature and a date-stamp. *Id.* at 5. Once signed, the forms are uploaded to the secure server and cannot be altered. *Id.* Torres confirmed that Plaintiffs all completed onboarding and electronically signed the arbitration agreements, which were then uploaded to Oasis's electronic servers. *Id.*

Plaintiffs do not offer any actual evidence to refute the validity of their signatures, despite having deposed both Torres and Harmony's administrative director. Dkt. 58, Ex. A & B. Nor do they explain how their electronic signatures do not comply with the law. Rather, they have provided affidavits claiming they do not recall reading or signing an arbitration agreement. Dkt. 27 at 21, 31, 42, 53. But general denials based on a lack of memory will not rebut a signed written agreement. *See, e.g.*, *Larsen v. Citibank FSB*, 871 F.3d 1295, 1307 (11th Cir. 2017); *Plazas Rocha v. Telemundo Network Grp. LLC*, No. 20-cv-23020, 2020 WL 6679190, at *4 (S.D. Fla. Nov. 12, 2020). Based on the copies of the electronically signed agreements Defendants have provided and the supporting affidavit, there is no genuine dispute that Plaintiffs signed the Oasis Agreement and consented to the arbitration provision.

### B. The Oasis Agreement was not superseded by the Employment Agreement.

Plaintiffs also argue that even if the Oasis Agreement is valid, it was superseded by the Employment Agreement, as evidenced by the Employment

9

Agreement's merger clause. As the merger clause states, the Employment Agreement represented the "entire agreement of the parties and supersedes any prior agreement, discussions, commitments, or understandings of any kind." Plaintiffs contend that this plain language provides that the Employment Agreement superseded *any* prior agreement, including the Oasis Agreement. Because the Employment Agreement negated the Oasis Agreement and does not itself mention arbitration, Plaintiffs contend that there is no enforceable arbitration agreement between the parties. *See* Dkt. 27 at 14. Plaintiffs' argument fails, however, because it fundamentally misunderstands the purpose and effect of a merger clause in a contract.

A merger clause is "[a] contractual provision stating that the contract represents the parties' complete and final agreement and supersedes all informal understandings and oral agreements relating to the subject matter of the contract." *Jenkins v. Eckerd Corp.*, 913 So. 2d 43, 53 n.1 (Fla. 1st DCA 2005) (quoting Black's Law Dictionary, 813 (7th ed. 1999)). A final integrated agreement discharges prior agreements that are within the scope of the final agreement's subject matter or are inconsistent with the final agreement's terms. Restatement (Second) of Contracts § 213 (1981). The primary purpose of a merger clause is thus to prevent a party from introducing parol evidence—evidence of preliminary negotiations or prior contemporaneous agreements between the parties—to vary or

contradict the written terms of the final agreement. *Jenkins*, 913 So. 2d at 53; *see also Sugar v. Estate of Stern*, 201 So. 3d 103, 108 n.6 (Fla. 3d DCA 2015).

A merger clause, however, does not conclusively establish that the parties to the final agreement intended to discharge a separate and distinct written contract. *Audiology Distrib., LLC v. Simmons*, No. 12-cv-02427-JDW, 2014 WL 7672536, at *14 (M.D. Fla. May 27, 2014) (collecting cases); *see Multimedia Pat. Tr. v. DirecTV, Inc.*, No. 09-cv-00278-H(CAB), 2011 WL 3610098, at *3 (S.D. Cal. Aug. 16, 2011) ("A boilerplate merger clause does not evidence a clear expression of intent to extinguish a separate and distinct written contract.") (cleaned up). Indeed, a merger clause in an integrated contract will not supersede a prior agreement that embraces a subject matter different from that addressed in the integrated contract. *E.g.*, *Yellowpages Photos, Inc. v. YP, LLC*, 418 F. Supp. 3d 1030, 1043 (M.D. Fla. 2019); *see also Franz Tractor Co. v. J.I. Case Co.*, 566 So. 2d 524, 525 (Fla. 2d DCA 1990).

So for the Oasis Agreement to be rendered unenforceable through the operation of the Employment Agreement's merger clause, Plaintiffs must show that the Oasis Agreement merged into the Employment Agreement. In effect, they must show that the Oasis Agreement was a prior understanding between the parties and covered the same subject matter addressed in the Employment Agreement. *See*

11

*Franz Tractor Co.*, 566 So. 2d at 525; *Aly Handbags, Inc. v. Rosenfeld*, 334 So. 2d 124, 126 (Fla. 3d DCA 1976). They cannot do this.

First, the Oasis Agreement was not a prior understanding or agreement between the parties. Defendants were not a party to the agreement, but a third-party beneficiary to it, and did not even know the Oasis Agreement existed until shortly before moving to compel arbitration. Dkt. 21 at 4 n.4. And for their part, Plaintiffs do not recall signing an arbitration agreement.

Second, the two agreements do not pertain to the same subject matter. The Employment Agreement concerns, as its title would suggest, the terms and conditions of Plaintiffs' employment and represents the "entire agreement" on this subject. It addresses Plaintiffs' compensation and sets out Harmony's policies that the Plaintiffs agreed to abide by, including the noncompete and no-poach provisions. The Agreement does provide that Harmony may seek any available remedies for the breach of the noncompete and no-poach provisions, including damages and injunctive relief. Dkt. 27 at 38–39. But the Employment Agreement is otherwise silent as to remedies or forum for deciding any other potential dispute between the parties. Moreover, it does not discuss arbitration or forbid it. The Oasis Agreement, on the other hand, expressly states that it is not an employment contract. *See* Dkt. 21-1 at 4; Dkt. 34-1 at 8. Its sole purpose, at least with respect to

Defendants, is to establish arbitration as the default mechanism for resolving legal disputes arising from Plaintiffs' employment. *Id.*

In short, the two agreements are independent and separate agreements that can be compartmentalized. One addresses the substantive terms of the employment relationship between Plaintiffs and Defendants. The other designates the default forum for resolving the disputes arising from that employment relationship. The two agreements do not overlap in any significant way. Plaintiffs validly entered both agreements. The parties have an enforceable arbitration agreement.

This result aligns with holdings of other courts that have recognized "a contractual clause selecting either a judicial or an arbitral forum for the resolution of disputes establishes a legal right which is analytically distinct from the rights being asserted in the dispute to which it is addressed." *Pelletier v. Yellow Transp., Inc.*, 549 F.3d 578, 581 (1st Cir. 2008); *Ryan v. BuckleySandler, LLP*, 69 F. Supp. 3d 140, 146 (D.D.C. 2014). Recognizing this distinction, courts have routinely enforced pre-existing arbitration agreements when a later agreement did not address arbitration. *See, e.g.*, *Ryan*, 69 F. Supp. 3d at 146; *Ramirez–Baker v. Beazer Homes, Inc.*, 636 F. Supp. 2d 1008, 1016 (E.D. Cal. 2008); *Youssefzadeh v. Glob.-IP Cayman*, No. 18-cv-02522, 2018 WL 6118436, at *4 (C.D. Cal. July 30, 2018) (holding that integrated employment agreement did not supersede prior arbitration agreement because it was a separate agreement that established the

distinct legal right of the parties to arbitrate their disputes). Accordingly, Plaintiffs must arbitrate their claims.[4]

### C. Defendants did not waive the right to arbitrate.

Finally, as a fall back argument, Plaintiffs contend that Defendants waived their right to arbitration by suing Plaintiff Garcia in state court to enforce the noncompete provision of the Employment Agreement. Dkt. 27 at 16. But as Defendants point out, this lawsuit is not relevant to the waiver analysis. "[O]nly prior litigation of the same legal and factual issues as those the party now wants to arbitrate results in waiver of the right to arbitrate." *Envision Ins. Co. v. Khan*, No. 13-cv-114-EAK-EAJ, 2014 WL 12868890, at *2 (M.D. Fla. Feb. 25, 2014) (quoting *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 133 (2d Cir. 1997)); *see also Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 328 (5th Cir. 1999); *Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 332 (7th Cir. 1995). The factual and legal issues in the suit for Garcia's alleged violation of the noncompete clause do

---

[4] Plaintiffs cite *Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir. 2014) and *Trinchitella v. D.R.F., Inc.*, 584 So. 2d 35 (Fla. 4th DCA 1991) as supporting their position. But both cases are distinguishable because they involved what amounted to a novation—a mutual agreement to substitute a new contract for an existing one. In both cases the parties entered a later agreement that replaced an earlier version of the same agreement. There was contractual privity between the parties for both agreements and a clear intent that the later agreement was to be the final version of the agreement. *See Dasher*, 745 F.3d at 1117–18; *Trinchitella*, 584 So. 2d at 35–36. Conversely, here, the Defendants were not a party to the earlier agreement, and the Employment Agreement was not a later version of the Oasis Agreement. The two agreements were individual and distinct.

not overlap with Plaintiffs' present FLSA claims. As a result, Plaintiffs must arbitrate their present claims.

## IV. CONCLUSION

For the reasons discussed, Defendants' Motion to Compel Arbitration (Dkt. 21) is granted. This action is stayed pending arbitration. *See* 9 U.S.C. § 3; *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992). The parties are directed to notify the Court upon resolution of the arbitration proceedings. The Clerk is directed to administratively close the case.

**DONE AND ORDERED** at Tampa, Florida on April 26, 2021.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record