## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

DAMIAN GARCIA, CHRISTOPHER
ANGELO, and NATHAN BEAUCHAMP,
individually and on behalf of all others similarly
situated,

        Plaintiffs,

v.

HARMONY HEALTHCARE, LLC, and
CHRISTIAN HG BROWN,

        Defendants.

_____/

CASE NO. 8:20-cv-01065-WFJ-AAS

## PLAINTIFFS' OMNIBUS MOTION FOR APPROVAL OF SETTLEMENTS AND MOTION TOSTAY THE CASE TO ENTER ORDER(S) NECESSARY TO ENFORCE ANY FEES AND COSTS AWARDED BY AN ARBITRATOR AND SUPPORTING MEMORANDUM OF LAW

Plaintiffs DAMIAN GARCIA and NATHAN BEAUCHAMP and Opt-In Plaintiffs AREN NILSSON, RACHEL JOHNSON, and JONAHTAN DOWNUM, (collectively, "Plaintiffs"), by and through their undersigned counsel, each move separately and file together this Omnibus Motion for Approval of Settlements and Motion to Stay the Case to Enforce Any Fees and Costs Awarded by an Arbitrator, together with their Supporting Memorandum of Law.[1]

The original plaintiffs sued in this Court to seek a collective action to collect unpaid overtime under the Fair Labor Standards Act ("FLSA"). After this Court compelled arbitration, and Plaintiffs each filed an arbitration demand with the American Arbitration Association ("AAA"). At varying points in the life cycle of each arbitration, the matters eventually settled—

---

[1] Opt-In Plaintiff Christopher Angelo is no longer represented by Plaintiffs' counsel. *See* Doc 87. Mr. Angelo and Defendants also settled.

using the same attorney-negotiated formula to calculate the amount of unpaid overtime. Because of the life cycle of the cases and the same or similar fairness considerations, Plaintiffs seek separate relief together in an omnibus motion for efficiency and judicial economy.

## BACKGROUND

### A.    The Paths Leading to Settlement Start in Federal Court

On May 7, 2020, the original plaintiffs instituted this action by filing the operative collective action complaint (the "Complaint") against Defendants, on behalf of themselves and others similarly situated, asserting a claim for unpaid overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. *See generally*, Collective Complaint, Doc. 1. The Complaint alleges that, on average, Plaintiffs worked in excess of forty hours in a given workweek for the duration of their employment and were not properly compensated for excess hours. *See id.* at ¶¶ 37-43, 53-56.

Plaintiffs were not required by Defendants to record their work time. The Complaint alleges that Plaintiffs were required to work at least ten hours of overtime each week, with Plaintiff Garcia alleging he worked, on average, approximately fifteen hours of overtime each week, and Plaintiff Beauchamp alleging he worked, on average, approximately ten hours of overtime each week. *See id.* at ¶¶ 22, 24-29, 45. The Complaint names Christian HG Brown as a Defendant pursuant to 29 U.S.C. § 203(e)(1). The Complaint alleges that, during the relevant time period, Mr. Brown was Defendant Harmony Healthcare, LLC's Chief Executive Officer and exercised significant control over Harmony's operations, including but not limited to the authority to hire and fire employees, determine compensation, control over employment-related records, and similar powers with respect to operational control of Harmony's day-to-day function. *See* Compl. at ¶¶ 7-8.

On or about June 17, 2020, Defendant Harmony filed its Answer and Affirmative Defenses, wherein they raise twenty-five purported affirmative defenses to the allegations in the Complaint. *See generally*, Defendant Harmony Healthcare, LLC's Answer and Defenses to Plaintiffs' Complaint, Doc. 14. Shortly thereafter, on or about July 20, 2020, Defendant Brown filed his Answer and Defenses to Plaintiffs' Complaint, wherein he also raised twenty-five purported affirmative defenses to avoid liability for Plaintiffs' claims. *See generally*, Defendant Christian HG Brown's Answer and Defenses to Plaintiffs' Complaint, Doc. 17.

From there, the parties carried forward to prepare the case for possible certification of the proposed collective and the resolution on its merits, with Aren Nilsson, another individual, filing a Consent to Join on or about August 11, 2020. *See generally*, Notice of Filing, Doc. 20. Then, on August 13, 2020, Defendants suddenly reversed course and sought to compel individual arbitrations, instead of relief on a collective-wide basis through the Court. *See* Defendants' Motion to Compel Arbitration and Stay Case Pending Arbitration or, Alternatively, to Strike Class Allegations, Doc. 21 ("Motion to Compel Arbitration").

## B. The Settlement Paths Fork Based on Defendants' Discovery of Arbitration Agreements with a Non-Party

The Motion to Compel Arbitration was based on Defendants' July 15, 2020, opportune discovery of the existence of an arbitration provision that Plaintiffs Garcia and Beauchamp signed with Defendants' professional employer organization, Non-Party Oasis Outsourcing—a provision that likely caught Defendants by surprise, given that Defendants previously sued Plaintiff Garcia in state court for alleged violations of the Employment Contract, as defined below. *See* Motion to Compel Arbitration at ¶ 12 and the Declaration of Cindy Kell included therewith ("Kell Decl.") at ¶7. Plaintiff Garcia and Plaintiff Beauchamp e-signed the agreements with Oasis Outsourcing on

June 14, 2018, and February 16, 2018, respectively. Both agreements contain the following arbitration provision:

> I and [employee leasing company, Oasis Outsources ("Oasis")] agree that any legal dispute with my Worksite Employer, Oasis, or any other party that may have an employment relationship with me arising out of or in connection with my employment, application for employment, or separation from employment for which I am, was, or would be paid through Oasis will be resolved exclusively through binding arbitration by a neutral arbitrator as provided in this agreement and, to the extent not inconsistent with the agreement, under the rules of a neutral arbitration service. The arbitrator will have the authority to grant the same remedies as a federal court (but no more), will apply the Federal Rules of Evidence and any applicable statutes of limitation, will render a reasoned, written decision based only on the evidence adduced and the law, and can grant attorneys fees and costs to the prevailing party subject to the applicable law.

*See id.* at Kell Decl., at ¶¶ 7-8 and Exs. A-D thereto. The agreement with Oasis further stated "No matter how a case is heard, I agree that I will participate only in my individual capacity and not as a member of a representative of a class." *Id.*. Hereinafter, the operative provision containing the arbitration agreement will be referred to as the "Arbitration Agreement."

Plaintiffs vigorously opposed the shift from defending the collective action on its merits in federal court to the pursuit of individual arbitrations over the course of months, arguing, among other things, that the Arbitration Agreement lacked consideration, the Employment Agreements signed by Defendant Harmony and each Plaintiff after the execution of the Arbitration Agreement superseded the Arbitration Agreement or merged the Arbitration Agreement into the Employment Agreements,[2] and waiver of the stated right to arbitrate. *See* Plaintiffs' Response Opposing

---

[2] Notably, the later-executed Employment Agreements contain he following paragraph:

> **15. Entire Agreement**: This instrument contains the entire agreement of the parties and supersedes any prior agreement, discussions, commitments, or understandings of any kind, whether oral or written; it may not be changed except by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, extension, or discharge is sought. The Employee acknowledges that he or she has received a copy of this agreement.

Defendants' Motion to Compel Arbitration and Stay Case Pending Arbitration, or Altaternatively[sp], to Strike Class Allegations, Doc. 27 ("Response to Motion to Compel"). This opposition continued through oral argument that took place before the Court on February 17, 2021; through the filing of requested supplemental authority (Docs. 72 & 73); and an eventual Motion for Certification of Interlocutory Appeal and Supporting Memorandum of Law that Plaintiffs filed August 5, 2021, in which they argued certification as appropriate to avoid a potential appeal after the parties had gone through the expense of individual Court-Ordered arbitrations.

Ultimately, however, the Court ordered Plaintiffs to arbitrate their present claims and to notify the Court upon resolution of the arbitration proceeds. *See* Order Granting Motion to Compel Arbitration, Doc. 75, entered April 26, 2021; Endorsed Order entered August 26, 2021, Doc. 79 (denying the Motion for Certification of Interlocutory Appeal).

### C.  Each Plaintiff Files a Demand for Arbitration of the Claims Raised in the Complaint

Consistent with the Court's directives, on or about May 13, 2021(G), Plaintiffs Garcia, Beauchamp, and Nilsson submitted individual Demands for Arbitration to pursue Defendants for their violations of the FLSA's overtime payment requirements. Plaintiff Garcia's Demand for Arbitration Package is attached hereto as **Exhibit A**; Plaintiff Beauchamp's Demand for Arbitration Package is attached hereto as **Exhibit B**; and Plaintiff Nilsson's Demand for Arbitration Package is attached hereto as **Exhibit C**.

On July 21, 2021, and November 12, 2021, respectively, Plaintiffs Johnson and Downum, submitted their own individual Demands for Arbitration. Plaintiff Johnson's Demand for Arbitration Packaged is attached hereto as **Exhibit D** and Plaintiff Down's Demand for Arbitration

---

Response to Motion to Compel at Comp. Ex. A and Ex. B to each Declaration therein.

Package is attached hereto as **Exhibit E**. Plaintiffs Johnson and Downum also filed Consents to Join with the Court on July 23, 2021 (Doc. 78) and November 8, 2021 (Doc. 85), respectively.

Because each claim is different and settled at a different point in the lifecycle of the arbitration, the status of each Plaintiff's claim and the settlement reached that is before the Court is discussed below for each individual Plaintiff.

   1. <u>Damian Garcia</u>

Plaintiff Garcia sought to recover all unpaid overtime due to him under the FLSA, an equal amount in liquidated damages, as well as taxable costs and attorneys' fees because of Defendants' failure to pay him for an average of 15 hours of overtime worked each week during his employment by Defendants from June 12, 2018, through January 27, 2019. *See* Ex. A.

Defendants responded on June 23, 2021, raising 18 purported affirmative defenses, including the application of FLSA Section 13(a)(1)'s Executive, Administrative, and/or Highly Compensated Employee Exemptions pursuant to 29 C.F.R. § 541.708 and stated they acted in good faith to avoid liability for liquidated damages. *See* Defendants Harmony Healthcare, LLC and Christian HG Brown's Answer and Defenses to Plaintiff Damian Garcia's Complaint and Demand for Arbitration, a copy of which is attached hereto as **Exhibit F**.

In addition to filing pleadings, the parties engaged in numerous teleconferences, submitted conflict information, selected an arbitrator, and attended a case management conference. Plaintiff Garcia additionally responded to written discovery and produced documents to Defendants.

Plaintiff Garcia and Defendants agreed to settle as follows, pending Court approval:

- Defendants will pay Plaintiff Garcia $4,189.24 ($2,094.62 for unpaid overtime wages and an equal amount in liquidated damages);

- Payment of his reasonable attorneys' fees and costs; and

- Dismissal of the AAA action with prejudice and dismissal with prejudice of his federal court claim.

The $2,094.62 figure assumes Plaintiff Garcia worked 8 overtime hours for 33 work weeks. Plaintiff Garcia's weekly salary and bonus was calculated to be $761.80 a week for the 33 week period, resulting in a regular rate of $15.8675 and a halftime overtime premium of $7.9337 per unpaid overtime hour worked. 33($7.9337*8)=$2,094.62.

After reaching an agreement, the parties submitted a Joint Notice of Settlement to the AAA on March 9, 2022, wherein they asked the AAA and the Arbitrator to stay all further proceedings "until the settlement is finalized, and either a motion for attorneys' fees or motion to dismiss is submitted." *See* Joint Notice of Settlement attached hereto as **Exhibit G**.

Counsel for the parties were not able to reach an agreement on the issue of attorneys' fees and costs. This is the sole remaining issue that must be resolved by a fact finder—with counsel for Plaintiff taking the position that, pursuant to the Court's Order compelling arbitration and the Arbitration Agreement, this is an arbitrable issue and counsel for Defendants appearing to take the position that this is a decision for the Court. Regardless, this issue should not delay a finding concerning the fairness of the settlement reached by Plaintiff Garcia and Defendants.

The office of counsel for Plaintiff advanced the fee resolution by contacting the AAA and the Arbitrator for a scheduling conference to establish an expedited briefing schedule and a date for a ninety-minute evidentiary hearing. *See* Email correspondence dated May 2, 2022, that is attached hereto as **Exhibit H**.

Based on the foregoing, Plaintiff Garcia seeks approval of the settlement, so that he can be compensated pursuant to a fair settlement agreement without delay.

2.  <u>Nathan Beauchamp</u>

Plaintiff Beauchamp sought to recover all unpaid overtime due to him under the FLSA, an equal amount in liquidated damages, as well as taxable costs and attorneys' fees because of Defendants' failure to pay him for an average of 10 hours of overtime worked each week during his employment by Defendants from March 15, 2018, through January of 2019.  *See* Ex. B.

Defendants responded on June 23, 2021, raising 18 purported affirmative defenses, including the application of FLSA Section 13(a)(1)'s Executive, Administrative, and/or Highly Compensated Employee Exemptions pursuant to 29 C.F.R. § 541.708 and stated they acted in good faith to avoid liability for liquidated damages.  *See* Defendants Harmony Healthcare, LLC and Christian HG Brown's Answer and Defenses to Plaintiff Nathan Beauchamp's Complaint and Demand for Arbitration, a copy of which is attached hereto as **<u>Exhibit I</u>**.

In addition to filing pleadings, the parties engaged in numerous teleconferences, submitted conflict information, selected an arbitrator, and attended a case management conference.  Plaintiff Beauchamp additionally responded to written discovery and produced documents to Defendants.

Plaintiff Beauchamp and Defendants agreed to settle as follows, pending Court approval:

- Defendants will pay Plaintiff Beauchamp $5,436.48 ($2,718.24 for unpaid overtime wages and an equal amount in liquidated damages);

- Payment of his reasonable attorneys' fees and costs; and

- Dismissal of the AAA action with prejudice and dismissal with prejudice of his federal court claim.

The $2,718.24 figure assumes Plaintiff Beauchamp worked 8 overtime hours for 42 work weeks.  Plaintiff Beauchamp's weekly salary and bonus was calculated to be $777.00 a week for the 42 week period, resulting in a regular rate of $16.19 and a halftime overtime premium of $8.09 per unpaid overtime hour worked.  42($8.09*8)=$2,718.24.

After reaching an agreement, the parties submitted a Joint Notice of Settlement to the AAA on March 9, 2022, wherein they asked the AAA and the Arbitrator to stay all further proceedings "until the settlement is finalized, and either a motion for attorneys' fees or motion to dismiss is submitted." *See* Joint Notice of Settlement attached hereto as **Exhibit J**.

Counsel for the parties were not able to reach an agreement on the issue of attorneys' fees and costs. This is the sole remaining issue that must be resolved by a fact finder—with counsel for Plaintiff taking the position that, pursuant to the Court's Order compelling arbitration and the Arbitration Agreement, this is an arbitrable issue and counsel for Defendants appearing to take the position that this is a decision for the Court. Regardless, this issue should not delay a finding concerning the fairness of the settlement reached by Plaintiff Beauchamp and Defendants.

The office of counsel for Plaintiff advanced the fee resolution by contacting the AAA and the Arbitrator for a scheduling conference to establish an expedited briefing schedule and a date for a ninety-minute evidentiary hearing. *See* Email correspondence dated May 2, 2022, that is attached hereto as **Exhibit K**.

Based on the foregoing, Plaintiff Beauchamp seeks approval of the settlement, so that he can be compensated pursuant to a fair settlement agreement without delay.

3.    Aren Nilsson

Plaintiff Nilsson sought to recover all unpaid overtime due to him under the FLSA, an equal amount in liquidated damages, as well as taxable costs and attorneys' fees because of Defendants' failure to pay him for an average of between approximately 15-20 hours of overtime worked each week during his employment by Defendants from April 30, 2018, through February 28, 2020. *See* Ex. C.

Defendants responded on June 23, 2021, raising 18 purported affirmative defenses, including the application of FLSA Section 13(a)(1)'s Executive, Administrative, and/or Highly Compensated Employee Exemptions pursuant to 29 C.F.R. § 541.708 and stated they acted in good faith to avoid liability for liquidated damages.  *See* Defendants Harmony Healthcare, LLC and Christian HG Brown's Answer and Defenses to Plaintiff Aren Nilsson's Complaint and Demand for Arbitration, a copy of which is attached hereto as **Exhibit L**.

In addition to filing pleadings, the parties engaged in numerous teleconferences, submitted conflict information, selected an arbitrator, and attended a case management conference.  Plaintiff Nilsson additionally responded to written discovery and produced documents to Defendants and vice versa.  Defendants additionally provided documentation to support the contention that Plaintiff Nilsson earned $105,658.26 for the 2019 tax year—a point they use to support their application of the FLSA's high wage exemption, coupled with their argument that Plaintiff Nilsson performed at least one exempt duty.  *See* 29 C.F.R. § 541.601(c).

Plaintiff Nilsson and Defendants agreed to settle as follows, pending Court approval:

- Defendants will pay Plaintiff Nilsson $12,517.12 ($6,258.56 for unpaid overtime wages and an equal amount in liquidated damages);

- Payment of his reasonable attorneys' fees and costs; and

- Dismissal of the AAA action with prejudice and dismissal with prejudice of his federal court claim.

The $6,258.56 figure assumes Plaintiff Nilsson worked 8 overtime hours for 44 work weeks (this assumption excludes the 2019 year when Plaintiff Nilsson earned more than $100,000.00).[3]  Plaintiff Nilsson's weekly salary and bonus was calculated to be $1,706.54 a week

---

[3] The settlement between Defendants and Plaintiff Christopher Angelo used the same formula to settle Mr. Angelo's overtime claim.  Thus, although undersigned counsel no longer represents Mr.

for the 44 week period, resulting in a regular rate of $35.55 and a halftime overtime premium of $17.78 per unpaid overtime hour worked.  44($17.78*8)=$6,258.56.

After reaching an agreement, the parties submitted a Joint Notice of Settlement to the AAA on March 9, 2022, wherein they asked the AAA and the Arbitrator to stay all further proceedings "until the settlement is finalized, and either a motion for attorneys' fees or motion to dismiss is submitted."  *See* Joint Notice of Settlement attached hereto as **Exhibit M**.

Counsel for the parties were not able to reach an agreement on the issue of attorneys' fees and costs.  This is the sole remaining issue that must be resolved by a fact finder—with counsel for Plaintiff taking the position that, pursuant to the Court's Order compelling arbitration and the Arbitration Agreement, this is an arbitrable issue and counsel for Defendants appearing to take the position that this is a decision for the Court.  Regardless, this issue should not delay a finding concerning the fairness of the settlement reached by Plaintiff Nilsson and Defendants.

The office of counsel for Plaintiff advanced the fee resolution by contacting the AAA and the Arbitrator for a scheduling conference to establish an expedited briefing schedule and a date for a ninety-minute evidentiary hearing.  *See* Email correspondence dated May 2, 2022, that is attached hereto as **Exhibit N**.

Based on the foregoing, Plaintiff Nilsson seeks approval of the settlement, so that he can be compensated pursuant to a fair settlement agreement without delay.

4.    Rachel Johnson

Plaintiff Johnson sought to recover all unpaid overtime due to her under the FLSA, an equal amount in liquidated damages, as well as taxable costs and attorneys' fees because of Defendants'

---

Angelo, if this Court finds Mr. Downum's settlement to be fair the same finding should be apply to Mr. Angelo's settlement.

failure to pay her for an average of approximately 10-15 hours of overtime worked each week during her employment by Defendants from August of 2019 through September 22, 2020.  *See* Ex. D.

Defendants responded on September 2, 2021, raising 18 purported affirmative defenses, including the application of FLSA Section 13(a)(1)'s Executive, Administrative, and/or Highly Compensated Employee Exemptions pursuant to 29 C.F.R. § 541.708 and stated they acted in good faith to avoid liability for liquidated damages.  *See* Defendants Harmony Healthcare, LLC and Christian HG Brown's Answer and Defenses to Plaintiff Rachel Johnson's Complaint and Demand for Arbitration, a copy of which is attached hereto as **Exhibit O**.

In addition to filing pleadings, the parties engaged in numerous teleconferences, submitted conflict information, selected an arbitrator, and attended a case management conference.

Plaintiff Johnson and Defendants agreed to settle as follows, pending Court approval:

- Defendants will pay Plaintiff Johnson $10,223.52 ($5,111.76) for unpaid overtime wages and an equal amount in liquidated damages);

- Payment of her reasonable attorneys' fees and costs; and

- Dismissal of the AAA action with prejudice and dismissal with prejudice of her federal court claim.

The $5,111.76 figure assumes Plaintiff Johnson worked 8 overtime hours for 57 work weeks.  Plaintiff Johnson's weekly salary and bonus was calculated to be $1,076.17 a week for the 57 week period, resulting in a regular rate of $22.42 and a halftime overtime premium of $11.21 per unpaid overtime hour worked.  57($11.21*8)=$5,111.76.

After reaching an agreement, the parties submitted a Joint Notice of Settlement to the AAA on March 9, 2022, wherein they asked the AAA and the Arbitrator to stay all further proceedings

"until the settlement is finalized, and either a motion for attorneys' fees or motion to dismiss is submitted." *See* Joint Notice of Settlement attached hereto as **Exhibit P**.

Counsel for the parties were not able to reach an agreement on the issue of attorneys' fees and costs. This is the sole remaining issue that must be resolved by a fact finder—with counsel for Plaintiff taking the position that, pursuant to the Court's Order compelling arbitration and the Arbitration Agreement, this is an arbitrable issue and counsel for Defendants appearing to take the position that this is a decision for the Court. Regardless, this issue should not delay a finding concerning the <u>fairness</u> of the settlement reached by Plaintiff Johnson and Defendants.

The office of counsel for Plaintiff advanced the fee resolution by contacting the AAA and the Arbitrator for a scheduling conference to establish an expedited briefing schedule and a date for a ninety-minute evidentiary hearing. *See* Email correspondence dated May 2, 2022, that is attached hereto as **Exhibit Q**.

Based on the foregoing, Plaintiff Johnson seeks approval of the settlement, so that she can be compensated pursuant to a fair settlement agreement without delay.

     5.    <u>Jonathan Downum</u>

Plaintiff Downum sought to recover all unpaid overtime due to him under the FLSA, an equal amount in liquidated damages, as well as taxable costs and attorneys' fees because of Defendants' or Defendant Harmony's, as the case may be, failure to pay him for an average of approximately 12.5 hours of overtime worked each week during his employment by one or more Defendant from February of 2018, through April of 2021. *See* Ex. E.

An arbitrator has been selected, the parties have engaged in numerous teleconferences, and, though Defendants have not filed a formal response, they have provided documentation to support the contention that Plaintiff Downum earned $107,128.23 for the 2019 tax year—a point they use

to support their application of the FLSA's high wage exemption, coupled with their argument that Plaintiff Downum performed at least one exempt duty. *See* 29 C.F.R. § 541.601(c).

Plaintiff Downum and Defendants agreed to settle as follows, pending Court approval:

- Defendants will pay Plaintiff Downum $26,069.33 ($13,034.67 for unpaid overtime wages and an equal amount in liquidated damages);

- Payment of his reasonable attorneys' fees and costs; and

- Dismissal of the AAA action with prejudice and dismissal with prejudice of his federal court claim.

The $13,034.67 figure assumes Plaintiff Downum worked 8 overtime hours for 104 work weeks (this assumption excludes the 2019 year when Plaintiff Downum earned more than $100,000.00). Plaintiff Downum's weekly salary and bonus was calculated to be $1,504.00 a week for the 104 week period, resulting in a regular rate of $31.3333333 and a halftime overtime premium of $15.6666667 per unpaid overtime hour worked. 104($15.6666667*8)=$13,034.6667.

After reaching an agreement, the parties communicated to the AAA and the Arbitrator that the matter has settled. Counsel for the parties were not able to reach an agreement on the issue of attorneys' fees and costs. This is the sole remaining issue that must be resolved by a fact finder— with counsel for Plaintiff taking the position that, pursuant to the Court's Order compelling arbitration and the Arbitration Agreement, this is an arbitrable issue and counsel for Defendants appearing to take the position that this is a decision for the Court. Regardless, this issue should not delay a finding concerning the <u>fairness</u> of the settlement reached by Plaintiff Downum and Defendants.

The office of counsel for Plaintiff advanced the fee resolution by contacting the AAA and the Arbitrator for a scheduling conference to establish an expedited briefing schedule and a date

for a ninety-minute evidentiary hearing.  *See* Email correspondence dated May 2, 2022, that is attached hereto as **Exhibit R**.

Based on the foregoing, Plaintiff Downum seeks approval of the settlement, so that he can be compensated pursuant to a fair settlement agreement without delay.

## MEMORANDUM OF LAW

## I.     FINAL APPROVAL OF THE SETTLEMENTS IS APPROPRIATE

### A.     The Settlements are Reasonable and Fair.

Judicial review and approval of each of the settlements is necessary to give them final and binding effect—even when, as here, the parties engaged in arbitrations and the matters are settled prior to the conclusion of the arbitrations.  *See Sammons v. Sonic-North Cadillac, Inc.*, 2007 WL 2298032, at *5 (M.D. Fla. Aug. 7, 2007) (explaining that, consistent with *Lynn's Food Stores, Inc. v. U.S. Dept. of Labor,* 679 F.2d 1350 (11th Cir. 1982), a proper settlement of an arbitration proceeding must be approved by a District Court or supervised by the Secretary of the Department of Labor).  As stated in *Lynn's Food Stores*, when reviewing a settlement, the Court is scrutinizing that settlement for fairness.  *Lynn's Food Stores*, 679 F.2d at 1352-53.

When parties are represented by counsel in an adversarial proceeding, there is a higher likelihood that a negotiated settlement is a fair and reasonable compromise.

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.* at 1354.

In the context of an adversarial proceeding, "[r]arely will the Court be in a position to competently declare that such a settlement is 'unreasonable.'" *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009). The Court should approve a FLSA settlement if it is "a fair and reasonable resolution of a bona fide dispute." *Lynn's Food Stores*, *supra* at 1354-55. In determining whether each settlement is fair and reasonable, the Court should consider the following factors as applied to the settlement in question:

(i)   the existence of fraud or collusion behind the settlement;
(ii)  the complexity, expense, and likely duration of the proceeding;
(iii) the probability of plaintiff's success on the merits;
(iv)  the range of possible recovery; and
(v)   the opinions of the counsel.

*See Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994); *Hamilton v. Frito-Lay, Inc.*, 2007 WL 328792 at *2 (M.D. Fla. Jan. 8, 2007); *Hill v. Fla. Ins. Elec., Inc.*, 2007 WL 781886 at *4 (M.D. Fla. Mar. 13, 2007). Here, the Court should apply the strong presumption in favor of finding each settlement fair. *Hamilton*, *supra* at *2-3.

**B.     The Relevant Criteria Support Final Approval of the Settlements.**

1.     There is no fraud or collusion behind the settlements.

First, courts have found no fraud or collusion where parties were represented by counsel and the amount to be paid to plaintiffs seemed fair. *See Helms v. Cent. Fla. Reg'l Hosp.*, 2006 WL 3858491 at *11-12 (M.D. Fla. Dec. 26, 2006). Here, each party in each arbitration was independently represented by counsel. In all of the arbitrations, Defendants were represented by Todd Aidman and Nicholas Andrews of Ford Harrison LLP. Each Plaintiff was represented by Kevin Zwetsch, William Cantrell, and Alissa Kranz of Cantrell Zwetsch, P.A.. Counsel for all parties have extensive experience litigating claims under the FLSA, with both firms specializing in employment law and having robust FLSA practices. Each counsel was obligated to, and did,

vigorously represent their clients' rights, including through the pursuit of a federal collective lawsuit, an attempt at interlocutory review, and five individual arbitrations that involved heavy negotiation of the settlements before the Court.

2. The complexity, expense, and length of future arbitrations and litigation through potential appellate review support the reasonableness of the settlements.

The parties continue to disagree over the merits of the FLSA claims by each Plaintiff and Plaintiffs maintain that potential appellate review could be appropriate. For instance, each Plaintiff contends that they were misclassified as exempt from the FLSA overtime requirements and not paid for overtime hours worked. Defendants contend that each Plaintiff was exempt under the Executive, Administrative, and/or Highly Compensated Employee Exemptions and not entitled to overtime and, even if not exempt, Defendants disagree with the amount of overtime hours each Plaintiff alleges they worked. Risk associated with the application of an exemption is particularly pronounced for Plaintiffs Nilsson and Downum, who earned more than $100,000.00 for the 2019 tax year. Defendants also contend that, even if there is liability for unpaid overtime, they acted reasonably and in good faith, so they would not be liable for liquidated damages—damages that are specifically accounted for in each of the settlements. Should each arbitration proceed, each arbitration will be conducted before the AAA, resulting in substantial expense and risk for all parties associated with resolving the issues disputed between the parties—a dispute that is likely to be extremely fact intense, given that Defendants had no formal timekeeping policy.

Further, the Court's approval of the settlements is necessary to avoid unnecessary expense associated with fee and cost motions or delay in paying each Plaintiff overtime compensation for which they were not previously paid. As explained above, the parties were not able to come to an agreement on the reasonable attorneys' fees and costs due to Plaintiffs' counsel for their work representing each Plaintiff in their pursuit of unpaid overtime. Approval of the settlements is

17

proper at this time, because, in the event the Court does not approve the settlements, the parties will be able to renegotiate and fix each settlement should they so desire before resolving the fee issue under the assumption that the Court will approve of the settlements. If the settlements are not approved or effectuated for some reason, moving forward with resolution of attorneys' fees—a process separate from Plaintiffs' overtime issue in which Plaintiffs do not need to be involved—will result in unnecessary expense and time incurred five times over.

If, on the other hand, the Court does approve the settlements, this approval will assist the Arbitrators with their determination of whether actions taken ultimately yielded final, approved compensation for each Plaintiff. It will also potentially assist other individuals that work or worked for Defendants, who may have similar claims and may be waiting for the results of these claims to pursue their own relief. In such a case, the longer the parties wait, the more recovery is potentially barred by the applicable statute of limitations.

These settlements, therefore, are reasonable means for all parties to minimize future risks and litigation costs.

      3.   <u>There has been sufficient investigation and exchange of information to allow the parties to make educated and informed decisions.</u>

The next factor the court should consider is the stage of the proceedings and the amount of discovery completed. In Plaintiffs Garcia's, Beauchamp's, and Nilsson's arbitrations, the parties have formally exchanged information through discovery regarding each Plaintiff's hours worked and compensation. In Plaintiffs Johnson's and Downum's arbitrations, the parties have exchanged informal information regarding each Plaintiff's hours worked and compensation. In all the parties' arbitration counsel have had many additional discussions and exchange of information relating to the FLSA claims and defenses, with counsel for each Plaintiff additionally heavily vetting each Plaintiff's claims and the facts underlying the same. In agreeing upon each of the settlements, the

parties exchanged sufficient information to allow them to make an educated and informed analysis and conclusion.

        4.      <u>Each Plaintiff's probability of success on the merits is uncertain.</u>

Each Plaintiff's probability of success on the merits is also uncertain, further suggesting that these settlements are all fair and appropriate.  Each Plaintiff asserts that they were misclassified as exempt and worked overtime hours, and that he was not paid for his overtime work—though formal timekeeping was not required.  Meanwhile, Defendants contend that they can present credible evidence that each Plaintiff was not misclassified for some or all the relevant periods at issue and, even if they were, that they did not work as much overtime as alleged and/or certain time that was not worked was not excluded from damages calculations.  Further, Defendants maintain that they acted reasonably and in good faith to attack entitlement to liquidated damages for each claim to the extent liability for unpaid overtime applies.

        5.      <u>Plaintiffs' ranges of possible recoveries are uncertain.</u>

Even if each Plaintiff prevails, their range of recovery is uncertain.  The parties disagree over basic factual allegations pertaining to the number of hours each Plaintiff worked.  The settlement in this matter results in a total payment to each Plaintiff as follows for alleged unpaid overtime:

| | |
|---|---|
| Plaintiff Damian Garcia | $4,189.24 |
| Plaintiff Nathan Beauchamp | $5,436.48 |
| Plaintiff Aren Nilsson | $12,517.12 |
| Plaintiff Rachel Johnson | $10,223.52 |
| Plaintiff Jonathan Downum | $26,069.33 |
| Plaintiff Christopher Angelo | $10,486.76 |

Considering the uncertainty of the amounts, if any, that each Plaintiff would recover if they were to continue arbitrating their FLSA overtime claims, the Court should find that the settlements are fair and reasonable.

      6.     <u>The parties weighed the opinions of counsel in deciding whether to settle.</u>

Finally, all parties were represented by counsel who have experience litigating FLSA claims.  The parties weighed the opinions of their counsel in deciding whether to settle. Accordingly, the Court should find that each Plaintiff's recovery is a fair and reasonable settlement of each of their bona fide disputes.

**C.    The "Compromise" of Plaintiff's FLSA Claim is Reasonable.**

There are *bona fide* issues as to whether each Plaintiff is exempt from the FLSA overtime requirements and whether each Plaintiff worked the number of hours they are claiming.  The settlements are fair resolutions of all of these *bona fide* disputes, each Plaintiff and Defendants in each of the claims risk the possibility that the Arbitrator would find against them should each of these matters proceed to final hearing.  Moreover, though many of the factual allegations are the same or similar, conclusions reached by each Arbitrator may be different and may lead to inconsistent results.

Additionally, each Plaintiff did not unfairly "compromise" their FLSA overtime claims. The settlement amounts represent reasonable compromises by the parties to each arbitration in the interest of mutual avoidance of the inherent risk involved in pursuing adjudication of each claim on its merits.

**D.    The Attorneys' Fees to be Paid as Part of the Settlements are**
**       Fair and Reasonable.**

The last element the Court should evaluate in determining fairness of each of the settlements is the reasonableness of the proposed attorneys' fees.  *See Helms v. Cent. Fla. Reg'l Hosp*., 2006

WL 3858491 at *6-7 (M.D. Fla. Dec. 26, 2006); *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849-50 (5th Cir. 1998). Where attorneys' fees and costs that parties agree upon for a plaintiff's counsel were negotiated separately from and without regard to the settlement sums being paid to plaintiff, those fees tend to be fair and reasonable. *See Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (stating, "if the parties submit a proposed FLSA settlement that (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.").

Here, there was no agreement on the specific number of fees that counsel for each Plaintiff would be paid for their work to secure recovery for each Plaintiff. The parties tried to resolve the issue, but it is ultimately for a neutral factfinder—it is Plaintiffs' counsel's understanding each Arbitrator—to decide. Given that it is each Arbitrator that will decide fees and not the parties, it is not possible that the amounts to be paid to Plaintiffs' counsel could negatively impact the compensation paid to each Plaintiff. As of present, there is no indication of what each neutral will decide.

## **CONCLUSION**

As demonstrated above, the settlement terms for each Plaintiff's settlement agreement are fair, reasonable and adequate. Each settlement does not include a general release, modification,

confidentiality, or non-disparagement provision. Thus, each Plaintiff, DAMIAN GARICA, NATHAN BEAUCHAMP, AREN NILSSON, RACHEL JOHNSON, and JONATHAN DOWNUM, seek approval of each of their settlements. Once the settlements are approved, each Plaintiff will dismiss their claim against Defendants in federal court with prejudice. Plaintiffs request, however, that the Court retain jurisdiction to the extent necessary to enter any Orders related to any attorneys' fees and costs awards entered by any Arbitrator.

WHEREFORE, the Parties respectfully request that the Court (i) GRANT the Omnibus Motion for Approval of Settlements and Motion to Stay the Case to Enforce Any Fees and Costs Awarded by an Arbitrator; (ii) APPROVE of each Plaintiff's settlement outlined in this motion; and (iii) GRANT such further relief as the Court deems appropriate.

/s/ Alissa A. Kranz
**WILLIAM J. CANTRELL**
Florida Bar No. 103254
Primary email: wcantrell@czattorneys.com
**KEVIN D. ZWETSCH**
Florida Bar No. 962260
Email: kzwetsch@czattorneys.com
**ALISSA A. KRANZ**
Florida Bar No. 112050
Primary Email: akranz@czattorneys.com
Secondary email: lcaulder@czattorneys.com
CANTRELL ZWETSCH, P.A.
401 East Jackson Street, Suite 2340
Tampa, Florida 33602
Telephone: 800.698.6650
Facsimile: 813.867.0116

## LOCAL RULE 3.01(G) CERTIFICATION

I hereby certify that the undersigned conferred with counsel for Defendants concerning the relief sought in this Motion on numerous occasions, including by telephone, email, and by

providing the instant motion to counsel Defendants prior to filing. However, it is my understanding that Defendants oppose the Motion insomuch as they believe it is premature and should be made after the dispute concerning attorneys' fees and costs is resolved. It is further my understanding that Defendants believe the dispute concerning attorneys' fees and costs should be resolved by the Court, instead of before the Arbitrators in the arbitration proceedings Defendants compelled.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 9, 2022, a copy of the foregoing was filed with Clerk of Court for the U.S. District Court, Middle District of Florida, Tampa Division using the Court's CM/ECF Filing System, which will electronically serve all counsel in this action via their electronic email addresses registered with the CM/ECF Filing System. A copy of the foregoing has also been sent via email and U.S. Mail to Pro Se Plaintiff Christopher Angelo at 4005 East Mountain Jay Lane, Flagstaff, AZ 86004 and cangelo66@yahoo.com.

*/s/ Alissa A. Kranz*
**WILLIAM J. CANTRELL**
Florida Bar No. 103254
Email: wcantrell@czattorneys.com
**KEVIN D. ZWETSCH**
Florida Bar No. 962260
Email: kzwetsch@czattorneys.com
**ALISSA A. KRANZ**
Florida Bar No. 112050
Email: akranz@czattorneys.com
Secondary email: lcaulder@czattorneys.com
CANTRELL ZWETSCH, P.A.
401 East Jackson Street, Suite 2340
Tampa, Florida 33602
Telephone: 800.698.6650
Facsimile: 813.448.2094