UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| DAMIAN GARCIA, CHRISTOPHER ANGELO, and NATHAN BEAUCHAMP, individually and on behalf of all others similarly situated,<br><br>  Plaintiffs,<br>v.<br><br>HARMONY HEALTHCARE, LLC, and CHRISTIAN HG BROWN,<br><br>  Defendants. | CASE NO. 8:20-cv-01065-WFJ-AAS |

**JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT AGREEMENTS**

Plaintiffs DAMIAN GARCIA, NATHAN BEAUCHAMP, and CHRISTOPHER ANGELO[1] and Opt-In Plaintiffs AREN NILSSON, RACHEL JOHNSON, and JONATHAN DOWNUM, (collectively, "Plaintiffs") and Defendants HARMONY HEALTHCARE, LLC and CHRISTIAN HG BROWN, by and through their undersigned counsel, hereby submit this Joint for Approval of FLSA Settlement Agreements and request that the Court dismiss this lawsuit, with prejudice. In support thereof, the Parties state as follows:

I.
**FACTUAL BACKGROUND**

**A.  Procedural History**

On May 7, 2020, the Plaintiffs Damian Garcia, Nathan Beauchamp, and Christopher Angelo instituted this action by filing the operative collective action complaint (the "Complaint") against Defendants, on behalf of themselves and others similarly situated, asserting a claim for

---

[1] Opt-In Plaintiff Christopher Angelo is no longer represented by Plaintiffs' counsel. *See* Doc 87. Mr. Angelo and Defendants were able to reach a resolution of the claims at issue, and Defendants advise that Mr. Angelo joins in and approves this Motion. *See* Ex. F.

unpaid overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. *See generally*, Collective Complaint, Doc. 1. The Complaint alleges that, on average, Plaintiffs worked in excess of forty hours in a given workweek for the duration of their employment and were not properly compensated for excess hours. *See id.* at ¶¶ 37-43, 53-56. Nilsson, Johnson and Downum filed consents to join on August 11, 2020, July 23, 2021, and November 18, 2021, respectively.

Defendants ultimately moved to compel the Plaintiffs claims to individual arbitration. *See Defendants' Motion to Compel Arbitration and Stay Case Pending Arbitration or, Alternatively, to Strike Class Allegations*, Doc. 21 ("Motion to Compel Arbitration"). After significant briefing and oral argument on the matter, the Court granted Defendants' Motion to Compel. *See Order Granting Motion to Compel Arbitration*, Doc. 75, entered April 26, 2021; Endorsed Order entered August 26, 2021, Doc. 79 (denying the Motion for Certification of Interlocutory Appeal).

Consistent with the Court's directive, on May 13, 2021, Plaintiff's Garcia, Beauchamp, Angelo and opt-in Plaintiff Nilsson submitted individual demands for arbitration. Opt-in Plaintiffs Johnson and Downum followed suit on July 21 and November 12, 2021, respectively.

**B.     The Individual Settlements**

   *i.     Damian Garcia*

Plaintiff Garcia alleged that he was misclassified as exempt under the FLSA, and that Defendants failed to pay him for an average of 15 hours of overtime worked each week during his employment by Defendants from June 12, 2018, through January 27, 2019. *See* Ex. A. Defendants argued that Plaintiff was properly classified, but in any event, Garcia did not work more than one to two hours of overtime each week.

Plaintiff Garcia and Defendants agreed to settle their *bona fide* dispute as follows: Defendants will pay Plaintiff Garcia $4,189.24 ($2,094.62 for unpaid overtime wages and an equal amount in liquidated damages), as well as reasonable attorneys' fees and costs in an amount to be agreed upon by the parties or decided by the fact finder. The $2,094.62 figure assumes Plaintiff Garcia worked 8 overtime hours for 33 work weeks. Plaintiff Garcia's weekly salary and bonus was calculated to be $761.80 a week for the 33-week period, resulting in a regular rate of $15.8675 and a halftime overtime premium of $7.9337 per alleged unpaid overtime hour worked.

On May 9, 2022, Plaintiffs filed their Plaintiffs' Omnibus Motion for Approval of Settlements and Motion to Stay the Case to Enter Order(s) Necessary to Enforce Any Fees and Costs Awarded by an Arbitrator and Supporting Memorandum of Law (Doc. 88) and pursued a resolution of the attorneys' fees by the arbitrator. However, on May 25, 2022, the attorneys' fees and costs issues was resolved as follows: Defendants are to pay counsel for Plaintiff Garcia $69,900.00, which is 55% of the amount billed to the matter, inclusive of the fees and costs incurred in the FLSA litigation that have all been allocated to his settlement. This payment shall be made on or before fourteen days from the date the settlement is approved by the Court.

    ii.    <u>Nathan Beauchamp</u>

Plaintiff Beauchamp alleged that he was misclassified as exempt under the FLSA, and that Defendants failed to pay him for an average of 10 hours of overtime worked each week during his employment by Defendants from March 15, 2018, through January of 2019. *See* Ex. B. Defendants argued that Beauchamp was properly classified, but in any event, Beauchamp did not work more than one to two hours of overtime each week.

Plaintiff Beauchamp and Defendants agreed to settle their *bona fide* dispute as follows: Defendants will pay to Plaintiff Beauchamp $5,436.48 ($2,718.24 for unpaid overtime wages and

an equal amount in liquidated damages), as well as reasonable attorneys' fees and costs in an amount to be agreed upon by the parties or decided by the fact finder. The $2,718.24 figure assumes Plaintiff Beauchamp worked 8 overtime hours for 42 work weeks. Plaintiff Beauchamp's weekly salary and bonus was calculated to be $777.00 a week for the 42-week period, resulting in a regular rate of $16.19 and a halftime overtime premium of $8.09 per alleged unpaid overtime hour worked.

On May 9, 2022, Plaintiffs filed their Plaintiffs' Omnibus Motion for Approval of Settlements and Motion to Stay the Case to Enter Order(s) Necessary to Enforce Any Fees and Costs Awarded by an Arbitrator and Supporting Memorandum of Law (Doc. 88) and pursued a resolution of the attorneys' fees by the arbitrator. However, on May 25, 2022, the attorneys' fees and costs issues was resolved as follows: Defendants are to pay counsel for Plaintiff Beauchamp $8,800.00, which is 54% of the amount billed to the matter. This payment shall be made on or before fourteen days from the date the settlement is approved by the Court.

      *iii.*    <u>Aren Nilsson</u>

Plaintiff Nilsson alleged that he was misclassified as exempt under the FLSA, and that Defendants failed to pay him for an average of 15-20 hours of overtime worked each week during his employment by Defendants from April 30, 2018, through February 28, 2020. *See* Ex. C. Defendants argued that Nilsson was properly classified, but in any event, Nilsson did not work more than one to two hours of overtime each week.

Plaintiff Nilsson and Defendants agreed to settle their *bona fide* dispute as follows: Defendants will pay to Plaintiff Nilsson $12,517.12 ($6,258.56 for unpaid overtime wages and an equal amount in liquidated damages), as well as reasonable attorneys' fees and costs in an amount to be agreed upon by the parties or decided by the fact finder. The $ 6,258.56 figure assumes

4

Plaintiff Nilsson worked 8 overtime hours for 44 work weeks. This assumption excluded the calendar year for 2019 when Plaintiff Nilsson earned more than $100,000, and arguably would have qualified for the highly compensated employee exemption. Plaintiff Nilsson's weekly salary and bonus was calculated to be $1,706.54 a week for the 44-week period, resulting in a regular rate of $35.55 and a halftime overtime premium of $17.78 per alleged unpaid overtime hour worked.

On May 9, 2022, Plaintiffs filed their Plaintiffs' Omnibus Motion for Approval of Settlements and Motion to Stay the Case to Enter Order(s) Necessary to Enforce Any Fees and Costs Awarded by an Arbitrator and Supporting Memorandum of Law (Doc. 88) and pursued a resolution of the attorneys' fees by the arbitrator. However, on May 25, 2022, the attorneys' fees and costs issues was resolved as follows: Defendants are to pay counsel for Plaintiff Nilsson $13,200.00 which is 56% of the amount billed to the matter. This payment shall be made on or before fourteen days from the date the settlement is approved by the Court.

   *iv.*   *Rachel Johnson*

Plaintiff Johnson alleged that she was misclassified as exempt under the FLSA, and that Defendants failed to pay him for an average of 10-15 hours of overtime worked each week during his employment by Defendants from August of 2019 through September 22, 2020. *See* Ex. D. Defendants argued that Johnson was properly classified, but in any event, Johnson did not work more than one to two hours of overtime each week.

Plaintiff Johnson and Defendants agreed to settle their *bona fide* dispute as follows: Defendants will pay to Plaintiff Johnson $10,223.52 ($5,111.76 for unpaid overtime wages and an equal amount in liquidated damages) , as well as reasonable attorneys' fees and costs in an amount to be agreed upon by the parties or decided by the fact finder. The $ 5,111.76 figure assumes

Plaintiff Johnson worked 8 overtime hours for 57 work weeks. Plaintiff Johnson's weekly salary and bonus was calculated to be $1,076.17 a week for the 57-week period, resulting in a regular rate of $22.42 and a halftime overtime premium of $11.21 per alleged unpaid overtime hour worked.

On May 9, 2022, Plaintiffs filed their Plaintiffs' Omnibus Motion for Approval of Settlements and Motion to Stay the Case to Enter Order(s) Necessary to Enforce Any Fees and Costs Awarded by an Arbitrator and Supporting Memorandum of Law (Doc. 88) and pursued a resolution of the attorneys' fees by the arbitrator. However, on May 25, 2022, the attorneys' fees and costs issues was resolved as follows: Defendants are to pay counsel for Plaintiff Johnson $6,600.00, which is 62% of the amount billed to the matter. This payment shall be made on or before fourteen days from the date the settlement is approved by the Court.

   v. *John James Downum*

Plaintiff Downum alleged that he was misclassified as exempt under the FLSA, and that Defendants failed to pay him for an average of 12.5 hours of overtime worked each week during his employment by Defendants from February of 2018, through April of 2021. *See* Ex. E. Defendants argued that Downum was properly classified, but in any event, Downum did not work more than one to two hours of overtime each week.

Plaintiff Downum and Defendants agreed to settle their *bona fide* dispute as follows: Defendants will pay to Plaintiff Downum $26,069.33 ($13,034.67 for unpaid overtime wages and an equal amount in liquidated damages), as well as reasonable attorneys' fees and costs in an amount to be agreed upon by the parties or decided by the fact finder. The $13,034.67 figure assumes Plaintiff Downum worked 8 overtime hours for 104 work weeks. This assumption excludes the 2019 year when Plaintiff Downum earned more than $100,000.00. Plaintiff

6

Downum's weekly salary and bonus was calculated to be $1,504.00 a week for the 104-week period, resulting in a regular rate of $31.33 and a halftime overtime premium of $15.67 per alleged unpaid overtime hour worked.

On May 9, 2022, Plaintiffs filed their Plaintiffs' Omnibus Motion for Approval of Settlements and Motion to Stay the Case to Enter Order(s) Necessary to Enforce Any Fees and Costs Awarded by an Arbitrator and Supporting Memorandum of Law (Doc. 88) and pursued a resolution of the attorneys' fees by the arbitrator. However, on May 25, 2022, the attorneys' fees and costs issues was resolved as follows: Defendants are to pay counsel for Plaintiff Downum $11,500.00, which is 82% of the amount billed to the matter. This payment shall be made on or before fourteen days from the date the settlement is approved by the Court.

      vi.    <u>Christopher Angelo</u>

Plaintiff Angelo alleged that he was misclassified as exempt under the FLSA, and that Defendants failed to pay him for an average of 15 hours of overtime worked each week during his employment by Defendants from May 2018, through June 2019. *See* Ex. F. Defendants argued that Angelo was properly classified, but in any event, Angelo did not work more than one to two hours of overtime each week.

Plaintiff Angelo and Defendants agreed to settle their *bona fide* dispute as follows: Defendants will pay to Plaintiff Angelo $$10,486.76 ($5,242.88 for unpaid overtime wages and an equal amount in liquidated damages). The $5,242.88 figure assumes Plaintiff Angelo worked 8 overtime hours for 104 work weeks. This assumption excludes the 2019 year when Plaintiff Angelo earned more than $100,000.00. Plaintiff Angelo's weekly salary and bonus was calculated to be $ 1,966.00 a week for the 32 week period, resulting in a regular rate of $40.95 and a halftime overtime premium of $20.48 per alleged unpaid overtime hour worked. While counsel for

7

Plaintiffs no longer represent Plaintiff Angelo, the same formula was used and negotiated by counsel for Plaintiffs while they were representing Plaintiff Angelo. Counsel for Plaintiffs are not and will not seek fees and costs related to the settlement of Plaintiff Angelo's claim.

## II.
## MEMORANDUM OF LAW

Courts must approve the settlement of FLSA claims, like those brought by Plaintiffs in this action. Such approval is warranted where, as here, the settlements are the result of contested litigation and resolve a bona fide dispute. *See Lynn's Food Stores, Inc.,* 679 F.2d at 1353 n.8 (11th Cir. 1982). The settlements in this case are the result of legal issues and facts that were strongly contested by the parties. Absent settlement, the parties would have to continue in arbitration, engage in discovery (including e-discovery), and seek the resolution of merits issues that would require summary judgment motions presenting difficult questions of law. And unless those issues were resolved by way of summary judgment, such contested issues would require arbitration hearings. Through settlement, Plaintiffs eliminate significant risks and time-consuming litigation and are ensured immediate recovery. *See In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 701 (E.D. Mo. 2002) ("As courts have recognized, when considering settlement agreements, they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation.") (internal quotations omitted).

The settlement of this case involves a *bona fide* dispute. Counsel for the parties had numerous discussions and exchanged several rounds of e-mail communications concerning the merits of Plaintiff's claims and Defendants' defenses. The matter was compelled to arbitration only after an extensive dispute over the enforceability of the arbitration agreements and class action waivers. The Parties then engaged in substantial written and document discovery in arbitration.

8

Only after a thorough evaluation of the strengths and weaknesses of their claims were the parties able to resolve this matter by executing the Agreements. Further, the Agreements were negotiated at arm's length with all parties availing themselves of the advice of their counsel of choice. In short, the terms of the Agreements are fair and reasonable.

Finally, this Court should also approve the attorneys' fees and costs provision of the Settlement Agreement because the parties complied with the ruling in *Bonetti v. Embarq. Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) when determining fees and costs. In *Bonetti* the Court held that if the Plaintiff's recovery and attorneys' fees were settled independently of the Plaintiff's claims, there would be no need to file the attorneys' billing records unless the fees were out of line compared with the settlement agreement. Thus, the award of attorneys' fees and costs would no longer require approval using the lodestar approach. *Id.* Here, the negotiation over attorneys' fees to be awarded did not commence until after the Plaintiffs' damages claims were settled, with the expectation that attorneys' fees and costs would be decided by each arbitrator presiding over the Plaintiffs' arbitrations. Accordingly, Plaintiffs' fees and costs were negotiated and settled independently of Plaintiffs' purported damages.

**WHEREFORE**, the parties respectfully request that the Court grant their Joint Motion For Approval of the Settlement Agreements, dismiss Plaintiffs' Collective Complaint (Doc. 1) with prejudice, and grant any other relief the Court deems just and proper.

Dated: June 23, 2022.

Respectfully submitted,

By: /s/ *Kevin D. Zwetsch*
Kevin D. Zwetsch, Esq.
kzwetsch@czattorneys.com
Alissa A. Kranz, Esq.
akranz@czattorneys.com
lcaulder@cztttorneys.com
CANTRELL ZWETSCH, P.A.
401 East Jackson Street, Suite 2340
Tampa, Florida 33602
Tel: 800-698-6650
Fax: 813-867-0116

*Attorneys for Plaintiff Garcia, Beauchamp, and the Opt-Ins*

By: /s/ *Nicholas S. Andrews*
Todd S. Aidman, Esq.
Florida Bar No.: 173029
taidman@fordharrison.com
Nicholas S. Andrews, Esq.
Florida Bar No. 0105699
nandrews@fordharrison.com
101 E. Kennedy Boulevard, Suite 900
Tampa, Florida 33602-5133
Telephone: (813) 261-7800
Facsimile: (813) 261-7899

*Attorneys for Defendants*

By: */s/ Christopher Angelo*[2]
Christopher Angelo
*Pro Se*
4005 East Mountain Jay Lane
Flagstaff, AZ 86004
Cangelo66@yahoo.com
*Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 9, 2022, a copy of the foregoing was filed with Clerk of Court for the U.S. District Court, Middle District of Florida, Tampa Division using the Court's CM/ECF Filing System, which will electronically serve all counsel in this action via their electronic email addresses registered with the CM/ECF Filing System. A copy of the foregoing has also been sent via email and U.S. Mail to Pro Se Plaintiff Christopher Angelo at 4005 East Mountain Jay Lane, Flagstaff, AZ 86004 and cangelo66@yahoo.com.

---

[2] *See* Ex. F.

By: /s/ *Kevin D. Zwetsch*

Case 8:20-cv-01065-WFJ-AAS   Document 95   Filed 06/23/22   Page 11 of 11 PageID 1163

11

By: /s/ *Kevin D. Zwetsch*